# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

JOSEPH R. TOLFREE,

    Plaintiff,

v.                                                                  Civil No. 05-CV-10002-BC

COMMISSIONER OF                                 DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                                   MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, and that the FINDINGS OF THE COMMISSIONER BE AFFIRMED.

---

[1] In its brief, the Commissioner makes separate recitations of the evidence she believes to be prior to Plaintiff's claimed onset of disability, that which is relevant for disability insurance benefits (DIB) purposes, and that outside any of these periods. I note at the threshold that such separate considerations are not inappropriate, as special earnings requirements apply to disability insurance benefits claims which do not apply to SSI claims. 42 U.S.C. §§ 416(I), 423(c)(1)(B)(I), *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976). However, since Plaintiff has both DIB and supplemental security income (SSI) claims, to which the special earnings requirements do not apply, the relevant medical evidence of record will be summarized without regard to the limitations contained in the special earnings requirements.

**II.     REPORT**

   **A.     Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 49 years of age at the time of the most recent administrative hearing and has completed a ninth grade education. (Tr. at 204.) Plaintiff's relevant work history included work as a construction laborer at six different companies over a nine-year period. (Tr. at 71.)

Plaintiff filed the instant claims on December 11, 2001, alleging that he became unable to work on April 15, 2001. (Tr. at 57-59, 189-91.) The claims were denied at the initial stage. (Tr. at 33, 192.) In denying Plaintiff's claims, the Defendant Commissioner considered carpal tunnel syndrome and disorders of the spine and right shoulder as possible bases of disability. (*Id.*)

On February 6, 2004, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Douglas Jones, who considered the case *de novo*. In a decision dated May 10, 2004, the ALJ found that Plaintiff was not disabled. (Tr. at 16-27.) Plaintiff requested a review of this decision on May 13, 2004. (Tr. at 14.)

The ALJ's decision became the final decision of the Commissioner when, after the review of an additional exhibit[2] (AC-1, Tr. at 198-99), the Appeals Council, on November 23, 2004,

---

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision,

denied Plaintiff's request for review.  (Tr. at 6-9.)  On January 5, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam).  The Commissioner is charged with finding the facts relevant to an application for disability benefits.  A federal court "may not try the case de novo, . . . ."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).  The scope of the court's review is limited to an examination of the record only.  *Brainard,* 889 F.2d at 681.  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)).  The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way,

---

which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.     Governing Law**

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S.

137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401, *et seq.*) and the Supplemental Security Income

Program of Title XVI (42 U.S.C. §§ 1381, *et seq*.)  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, both require a finding of disability for the award of benefits.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three:  If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four:  If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five:  If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled."  *Preslar*, 14 F.3d at 1110.  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."  *Id.*  "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ."  *Id.*

**D.     Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that on September 5, 1996, Plaintiff came to the emergency room of Saginaw General Hospital after putting his fist through a window. Plaintiff was bleeding from his right wrist and was unable to flex his fingers or thumb. Physical examination was normal, and Plaintiff was admitted to the hospital and taken to the operating room for exploratory surgery and repair. Surgery was performed on Plaintiff's hand and wrist, a piece of glass was removed, tendons and arteries were repaired, and the hand and wrist were sewn up and placed in a splint. (Tr. at 113.) Plaintiff was discharged the next day in stable condition with pain medication and instructions not to work, to start hand therapy in a couple of days, and to follow up with his doctor in two weeks. (Tr. at 109.)

Plaintiff was seen by Dr. Stephen Morris for follow-up visits on four different occasions between September 12 and December 5, 1996. Sutures were removed, the hand was healing well, movement was improving, therapy was continued, but Plaintiff was concerned about the numbness. (Tr. at 120-22.) Three months following surgery, Plaintiff was again examined by Dr. Morris. Plaintiff could not bring the fingers down into the palm completely but was able to straighten them almost completely. Sensory testing showed dramatic improvement. Plaintiff was instructed to continue therapy once a week. Dr. Morris felt that Plaintiff was making "quite good progress considering the extremely severe nature of his injury." (Tr. at 119.)

Plaintiff was seen again for follow-up exams by Dr. Morris in January, April and September of 1997. (Tr. at 116-18.) Plaintiff showed further progress at each visit. In January, Dr. Morris advised Plaintiff that he could work to tolerance with his hand and that he should continue therapy. In April, Dr. Morris advised Plaintiff that there was nothing more he could do for him. He stated

that the sensation in Plaintiff's hand should continue to improve but would never return completely to normal.  Dr. Morris reported that "Overall, considering the magnitude of his injury, he is doing very well." (Tr. at 117.)  In September, Dr. Morris reported that Plaintiff had good motion, and that Plaintiff's primary problem was loss of sensation.  The doctor advised Plaintiff that he should avoid working at heights but that he could work at ground level.  He also stated that Plaintiff probably could not work with heavy objects such as a jackhammer.  (Tr. at 116.)

In November 1997, Plaintiff was seen by Dr. Kevin Robinson, M.D., due to pain in his left shoulder following a fall down some stairs.  X-rays showed no signs of fracture, and Plaintiff was assessed with rotator cuff tendinitis and biceps tendinitis.  Plaintiff was given Motrin and Tylenol and a program for range of motion exercises.  (Tr. at 126.)  Plaintiff had a follow-up exam on December 23, 1997.  He reported he was still having discomfort in his left shoulder and requested a Cortisone shot.  Plaintiff then noted significant relief of pain and improvement in his range of motion.  (Tr. at 125.)

Plaintiff was seen again by Dr Robinson nearly one year later, complaining of pain in both wrists and pain returning in the left shoulder. Examination revealed minimal swelling of the wrists and a ganglion cyst on the right wrist.  The left hand showed a similar finding, although much smaller. Grip strength was good bilaterally.  Plaintiff had full range of motion in his left shoulder with some crepitation.[3]  The doctor prescribed Motrin and advised Plaintiff to return in four to six weeks.  (Tr. at 124.)  Plaintiff returned to Dr. Robinson on October 29, 1998, for a follow-up examination.  He reported still having some pain in the shoulder and the doctor's examination was

---

[3]Crepitation is defined as "a crackling sound produced in joints, as in arthritis."  2 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE C-493.

8

characterized as "good." Dr. Robinson continued him on shoulder strengthening exercises. (Tr. at 123.)

On February 5, 2001, Plaintiff was seen by Dr. A. W. Weiss, Jr., after being referred by the emergency room where Plaintiff was seen because of painful ganglions of the wrists. Plaintiff reported that he had numbness and pain in his fingers and hands and that they never felt normal. (Tr. at 177.) X-rays taken on January 16 showed no significant abnormality in the left wrist or hand. (Tr. at 127.) Dr. Weiss ordered an EMG (Tr. at 177), which showed bilateral median nerve dysfunction of the wrist as in carpal tunnel syndrome, more so on the right than the left. (Tr. at 128-29.) Dr. Weiss saw Plaintiff again on March 5, 2001, and Plaintiff stated that he had been unable to work due to the pain in his hands. Dr. Weiss prescribed Motrin and put him on therapy for three weeks. He also prescribed splints for both hands to be worn every night. The doctor stated that if there were no improvements in three to four weeks, he would have to schedule surgery. (Tr. at 177.)

On May 31, 2001, Dr. Weiss wrote in a "To Whom It May Concern Note" as follows: "Due to the type of work Mr. Tolfree does, he is to remain off work until his scheduled surgery date of 6/13/01. Disability status will be updated following his surgery." (Tr. at 176.) Plaintiff underwent left carpal tunnel release surgery on June 13 and was discharged with splint, to be seen back in ten days. (Tr. at 175.) Plaintiff returned to Dr. Weiss on June 21 stating that sensation had improved dramatically. Pain was also improved, and Plaintiff was instructed not to do anything painful. (Tr. at 173.)

On September 20, 2001, Plaintiff underwent carpal tunnel release surgery on his right hand. (Tr. at 132.) Sutures were removed on October 1, and Plaintiff stated that his hand felt more numb than it did before surgery. (Tr. at 172.) On November 12, Plaintiff was seen again and stated his

9

right hand was still quite sore and that he was not getting much sensation back. Dr. Weiss recommended another EMG of that hand. (*Id.*) An EMG was done, and a report dated November 21, 2001, showed severe right median nerve dysfunction at the left of the wrist. "Compared to the previous electromyogram done in February of 2001, the present electromyogram has shown significant worsening." (Tr. at 135.) Plaintiff was seen again on December 10, 2001. Dr. Weiss reported that Plaintiff was "basically disabled and I don't think there is anything else that can be done surgically or medically for him." (Tr. at 171.) Dr. Weiss said that Plaintiff's left hand was improved somewhat, but that he had positive Tinel's and Phalen's on the right and negative on the left. He stated that there was nothing else he could do for Plaintiff. (*Id.*)

On February 5, 2002, Plaintiff reported to the emergency room of Covenant Healthcare with sharp chest pain. An EKG was obtained, and a cardiac workup was negative. Plaintiff was admitted to the hospital to undergo stress testing. (Tr. at 143-44.) Upon admission, Plaintiff reported a history of smoking and that there was a family history of lung cancer. An EKG and electrolytes were within normal limits. (Tr. at 145-46.) A chest x-ray revealed no acute pulmonary or pleural abnormality and no significant radiographic change from previous examinations. (Tr. at 137.) A stress test report suggested a high fitness classification. Plaintiff's oxygen saturation fell from 99% to 90%, however, suggesting a significant degree of chronic obstructive pulmonary disease. (Tr. at 138-39.) An echocardiogram was normal. (Tr. at 140.) Plaintiff was discharged on February 6, 2002, with a diagnosis of musculoskeletal chest pain, and chronic smoking history. He was instructed to follow up with his family physician. Plaintiff was advised to quit smoking. (Tr. at 136.)

On February 11, 2002, Plaintiff again went to the emergency room of Covenant Healthcare complaining of sharp chest pain. Plaintiff was given Pepcid, MS, and Inapsine, with total relief

10

of his pain. An EKG showed normal sinus rhythm, and a chest x-ray showed no evidence of pulmonary embolism. There was some fluid in the lower lobes, however. Plaintiff was given pain medication and instructed to schedule a follow-up examination. (Tr. at 147-49.)

On June 12, 2002, Dr. Siva Sankaran examined Plaintiff at the request of the Disability Determination Service. Dr. Sankaran reported that Plaintiff had good grip strength with some atrophy on the right side. He had a sustained fracture of the right humerus at the shoulder with limited motion. He also noted fractures of the vertebrae in the lumbar spine with rod placement and bone grafting. He stated that there was no limitation of motion in the lumbar spine. (Tr. at 151-53.)

A report by an employee of the Commissioner, dated June 25, 2002, states that Plaintiff reported that his pain felt like numbness and prickling in his hands and aching in his shoulders, and that the pain increased with use. Plaintiff also reported he could walk 2-3 miles, stand for 2-4 hours, and could lift/carry 30-50 pounds. (Tr. at 160.)

In a letter to Plaintiff's attorney, dated September 19, 2002, Dr. Weiss reported as follows: "He is severely disabled. I don't think he will ever be able to work at anything productive. I feel very disheartened that I am not able to do anything to enhance his life. He basically has to live with what he has for the rest of his life. It is not going to change and I don't think he is capable of doing any kind of work." (Tr. at 170.)

Plaintiff was seen by Dr. Gavin Awerbuch on March 3, 2003. Dr. Awerbuch reported that Plaintiff's cranial nerves were intact, reflexes were normal, and that his gait was normal. The doctor's impressions were severe carpal tunnel with atrophy of his right hand which would probably be a chronic problem and would not improve with surgery. (Tr. at 185.)

Plaintiff was seen again by Dr. Weiss on March 19, 2003. Dr. Weiss noted severe nerve changes and noted that nothing more could be done surgically for him. He stated that Plaintiff had extreme severe atrophy of the right hand with a similar situation on the left. An EMG showed severe right and left carpal tunnel syndrome. (Tr. at 180.)

At the administrative hearing, a vocational expert (VE) testified. She characterized Plaintiff's prior work as a construction worker and equipment operator as medium in exertion and Plaintiff's prior work as a concrete construction laborer to be heavy in exertion. (Tr. at 101, 225.) In response to a hypothetical question presuming a person of Plaintiff's circumstances, able to perform light work which required only occasional bending at the waist or knees, only occasional pushing or pulling with the arms, no use of vibrating tools, and a person with diminished feeling and ability to grasp with the hands, the VE opined that such a person could not return to Plaintiff's prior work. (Tr. at 225-26.) She then identified approximately 1,760 information clerk, 10,700 security guard, and 12,000 inspector jobs consistent with these hypothetical conditions. When asked to identify jobs that could be done either sitting or standing, the VE identified 6,000 of the previously described inspector positions, and also identified 2,000 to 3,000 self-serve gas station attendant jobs. (Tr. at 226-27.)

### E.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 26.) At step two, the ALJ found that Plaintiff's impairments were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his past relevant

work.  (*Id.*)  At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy.  (Tr. at .)  Using the Commissioner's grid rules as a guide, the ALJ found that "there are a significant number of jobs in the national economy that he can perform.  Examples of such jobs include work as security guard, inspector and information clerk."  (Tr. at 27.)

>    **F.**    **Analysis and Conclusions**

>    **1.**    **Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work.  (Tr. at 26.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

>    **2.**    **Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite

conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

After review of the administrative record, I suggest that substantial evidence supports the ALJ's findings. Subsequent to Plaintiff's 1996 injury, Dr. Morris reported that Plaintiff was making "quite good progress considering the extremely severe nature of his injury." (Tr. at 119.) Dr. Morris subsequently reported that Plaintiff showed improvement with each follow-up visit. (Tr. at 116-18.) One year subsequent to Plaintiff's shoulder injury, Dr. Morris reported that Plaintiff had good motion in his hands. (Tr. at 116.) Dr. Robinson reported that Plaintiff had undergone significant relief of pain and improvement of his range of motion after treatment. (Tr. at 125.) Approximately eleven months after the shoulder injury, Dr. Robinson reported that a follow-up examination was "good." (Tr. at 123.) Dr. Weiss reported that subsequent to the surgery he performed on Plaintiff's left hand, sensation in that hand improved dramatically. (Tr. at 173.) Dr. Weiss subsequently reported that orthopedic signs were negative in the left hand. (Tr. at 171.) An echocardiogram of Plaintiff's heart, conducted at Covenant Health Care, was negative. (Tr. at 140.) A subsequent EKG was also normal. (Tr. at 147-49.) Although Plaintiff's treating physicians ultimately concluded that some of his impairments were permanent, Plaintiff reported to an employee of the Commissioner in June of 2002 that he could walk two to three miles, stand two to four hours, and lift and carry between 30 and 50 pounds. (Tr. at 160.)

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that were appropriately consistent with the objective medical findings contained in the medical records available to the ALJ, and in particular, findings and assessments of Drs. Morris and Robinson, and Dr. Weiss's characterization of the surgery he performed on Plaintiff's left hand, as well as Plaintiff's own statements to an employee of the

14

Commissioner. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 531 (6th Cir. 1997). Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

After review of the record, I conclude that the decision of ALJ Jones, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
| Dated: July 29, 2005 | s/ *Charles E Binder*<br>CHARLES E. BINDER<br>United States Magistrate Judge |

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson, and served in the traditional manner on Cheryl J. Auger and Honorable David M. Lawson.

|  |  |
|---|---|
| Dated: July 29, 2005 | By   s/Mary E. Dobbick<br>Secretary to Magistrate Judge Binder |

17